**David S. Aman**, OSB No. 962106
Email: david@amanlawpdx.com
Aman Law LLC
8 North State St, Suite 301
Lake Oswego, OR 97034
Phone: 503.810.0850

Renee E. Stein, WSBA 21164
(To Seek Admission Pro Hac Vice)
Email: renee@rsteinlaw.com
Law Office of Renee E. Stein
320 E. Dalby Rd, Suite E
Union, Washington 98592
Phone: (360) 898-9245

      **Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **CHRIS MCKINNEY,**<br><br>Plaintiff,<br><br>v.<br><br>**BENTON COUNTY**, a political subdivision of the State of Oregon; **SCOTT JACKSON**, individually and as Benton County Sheriff for Benton County Sheriff's Department; **GREG RIDLER**, individually and as Undersheriff for Benton County Sheriff's Department; **BENTON COUNTY HEALTH DEPARTMENT**, a Federal Health Services Organization; **MITCH ANDERSON**, individually and as Director of Behavioral Health Services; **DANNIELLE BROWN**, individually and as Behavioral Health Services Deputy Director; **DAWN EMERICK**, as Benton County Health Department Director.<br><br>                Defendants. | Case No. 6:19-CV-01444-AA<br><br>**FIRST AMENDED COMPLAINT**<br><br>(1) 42 U.S.C. § 1983<br>(2) INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS<br>(3) INTENTIONAL INTEFERENCE WITH ECONOMIC RELATIONS<br>(4) WRONGFUL TERMINATION<br><br>**DEMAND FOR JURY TRIAL** |

Page 1 -    **FIRST AMENDED COMPLAINT**

Plaintiff Chris McKinney alleges as follows:

## INTRODUCTION

1.  This case involves the flagrant and unlawful abuse of power by the Sheriff's Department of Benton County and the Benton County Behavioral Health Services against the plaintiff.

## PARTIES, JURISDICTION AND IMMUNITY

2.  The federal claims in this suit are authorized by 42 U.S.C. § 1983 (allowing suit to correct constitutional violations); 42 U.S.C. § 1988 (providing for attorney fee and litigation expenses awards); and the Fourteenth Amendment of the Constitution.

3.  Plaintiff brings this action and seeks compensatory and punitive damages and other relief under 42 U.S.C. §§ 1983 *et seq.*, the Fourteenth Amendment of the U.S. Constitution, and other statutory and common law claims for negligence and for grossly negligent, reckless, corrupt, malicious, unconstitutional, willful and wanton conduct, as alleged herein.

4.  The events giving arise to this Complaint took place in Benton County, Oregon.

5.  Plaintiff worked for the Benton County Health Department, Mental Health Services Division ("BCHD").

6.  Plaintiff Christopher McKinney ("Plaintiff" or "McKinney") is a resident of Lincoln County, Oregon.

7.  Plaintiff began working for BCHD as a Forensic Peer Support Specialist on or about July 25, 2016. Prior to the actions alleged herein, he had never received any formal or informal discipline with BCHD. His role as Peer Specialist was to meet with and work individuals in the community who had been arrested by the Benton County Sheriff's Office for violations related to intoxication, drug use, homelessness or mental health reasons. As part of Plaintiff's role and responsibility, he would meet with these "clients" and make sure that they were given opportunities for treatment and support when they were released from the jail.

8.      Defendant Scott Jackson ("Jackson"), upon information and belief, is a resident of Benton County, Oregon. Jackson was appointed Sheriff of Benton County on or about July 1, 2013. Jackson is sued in both his individual capacity and in his official capacity as Sheriff of Benton County Sheriff's Office ("BCSO").

9.      Defendant Greg Ridler ("Ridler"), upon information and belief, is a resident of Benton County, Oregon. It is unknown when Ridler was appointed Undersheriff of Benton County. This is a position he currently holds. Ridler is sued in both his individual capacity and in his official capacity as Undersheriff for BCSO.

10.     Defendant Mitch Anderson ("Anderson"), upon information and belief, is a resident of Benton County, Oregon. Anderson is employed as Director of BCHD. Anderson is sued in both his individual capacity and in his employment capacity as BCHD Director.

11.     Defendant Dannielle Brown ("Brown"), upon information and belief, is a resident of Benton County, Oregon. Brown is employed as Deputy Director of BCHD. Brown is sued in both her individual capacity and in her employment capacity as BCHD Deputy Director.

12.     Defendant Dawn Emerick ("Emerick"), upon information and belief, is a resident of Benton County, Oregon. Emerick is employed as Health Department Director of BCHD. Emerick is sued in both her individual capacity and in her employment capacity as BCHD Health Department Director.

## **WAIVER OF IMMUNITY**

13.     To the extent that any and/or all of the defendants in this action claim they are government owned, operated and/or funded entity, or an employee and/or agent of any such entity, subject to government immunity, all such defendants' waived governmental immunity and/or sovereign immunity for any of the acts or omissions described herein. Defendants may not legally assert immunity to Plaintiff's 42 U.S.C. § 1983 claims for violations of U.S. Constitution or their Oregon constitutional claims.

Page 3 -     **FIRST AMENDED COMPLAINT**

14.     In the alternative, the actions of the Defendants were outside the scope of that agency, malicious and/or corrupt, and/or not in keeping with the policy and customs of the BCSO, such that the individual defendants are personally liable for the violation of Plaintiff's constitutional and statutory rights.

## FACTUAL ALLEGATIONS

15.     On or about November 21, 2017, Defendant Jackson sent an email to Tracy Martineau, Christine Hoffmann and Jesus Jara wherein he announced a decision to bar Plaintiff from the jail's interior and immediate vicinity. This effectively barred Plaintiff from performing his duties as a Forensic Peer Specialist for the Mental Health Department. Defendant Jackson purported to base his decision on video and written statements from the BCSO employees concerning Plaintiff's behavior while visiting the jail. The later issue relates to two incidents described below that allegedly happened in June 2017. Plaintiff was not advised of the specifics of these allegations until December 5, 2017 and was never given an opportunity to clear his name prior to having his jail access privileges revoked.

16.     On or around November 28, 2017, Plaintiff was ordered by the BCHD's Human Resources to attend an investigatory meeting on December 5, 2017 related to allegations made by Defendant Jackson that the Plaintiff had removed items from a client's purse. Attending that meeting was Jesus Jara (the HR Analyst), Liz Scott (Plaintiff's immediate manager), Defendant Danielle Brown and Plaintiff's union representative, Mark Davis.

17.     Defendant Ridler produced a written report on the review of the incident. The Report claimed that there were accusations that Mr. McKinney was "observed" in the video recording and by Benton County deputies acting in an unusual manner. However, a conclusion of "unusual" behavior by Plaintiff is not supported by what the video actually shows. Defendants Ridler and Jackson did not attend this meeting.

18.     Plaintiff believed the meeting was to discuss with him the policy for handling of client's property.  In the meeting, Jara accused Plaintiff of removing items from the purse and alleged that it had been caught on tape.  The attendees along with the Plaintiff viewed the video tape, which confirmed that the accusation was false and not as alleged.  Plaintiff explained the "white item" thought to come from the client's purse was, in fact, white paper on Plaintiff's clipboard.  At that point, the attendees realized they had rushed to judgment and Plaintiff was excused.

19.     On or about December 27, 2017, Plaintiff was called into a meeting with Defendant Brown and advised that it was determined that there was no culpability by Plaintiff and, therefore, no legal or disciplinary action was warranted against Plaintiff and the matter was closed.  Subsequent to this meeting and being advised of the policy, no further action was taken.

20.     Plaintiff received a Letter of Expectations, dated December 27, 2017, resulting from the fact finding conducted on December 5, 2017.  The Letter of Expectations detailed the Department's handling of client property.  It also stated that Plaintiff's explanation regarding the "purse" incident was "credible".  Nevertheless, Defendants Jackson and Ridler did not retract their allegations.

21.     On or about April 24, 2018, Plaintiff sent an email to Defendant Jackson to determine if Plaintiff could provide housing in his home to a convicted sexual offender.  Defendant denied the request as being inappropriate for a "high risk liability of the offender." He went on to imply that Plaintiff was using poor judgment to make such as request and stated that the request reinforces his decision to ban Plaintiff from the jail.  In fact, the offender was a level 1 (the lowest level) offender.  Defendant publicly and widely questioned Plaintiff's reputation for integrity and professionalism by disseminating the email to Defendants Ridler, Anderson, Brown and Justin Carley, Elizabeth Scott, Joseph Kerby and Cody Smith with the intent to further embarrass and humiliate Plaintiff for merely seeking approval on his request.

Page 5 -     **FIRST AMENDED COMPLAINT**

22.     On or about July 5, 2018, Plaintiff was again asked to attend a fact-finding meeting with Brown in attendance. The meeting involved reading two complaints from County clients about alleged inappropriate interactions with them by Plaintiff. Plaintiff first heard about the complaints in the "fact-finding" meeting even though the alleged incidents had occurred some 11 months earlier.

23.     Defendant Ridler's report stated that an unknown temporary-hire deputy at the jail alleged that Plaintiff "made comments or said something that overstepped some boundaries at the jail and made it uncomfortable." She also allegedly said that she "wouldn't say that I was uncomfortable enough not to work around him." Her own admission indicates that her "feelings" did not rise to the level of sexual harassment. Nor did the officer state why she did not report it to anyone until questioned by Ridler in order to provide him further unsupported allegations against Plaintiff.

24.     Further, Jackson sent an email to Plaintiff's peers, managers and other agencies that work within the BCHD disparaging Plaintiff's reputation, breaching his right to confidentiality and recommending that his access to the parole office be revoked.

25.     Again, without being the opportunity to clear his name, Defendant Brown advised Plaintiff he could not have any contact with clients until he completed boundary training. By August 2018, Plaintiff completed the training. However, even after Plaintiff completed the mandatory training, Defendant Jackson's and Ridler's decision to ban Plaintiff from contact with jail, parole and probation clients diminished Plaintiff's role and responsibility as a Peer Specialist and his reputation. Defendants Jackson and Ridler were fully aware of the ramifications of Plaintiff's diminished responsibilities and future opportunities to grow and advance within the BCHD.

26.     On or about February 27, 2019, Plaintiff was issued a Written Reprimand from Defendant Brown wherein she accused Plaintiff of "misconduct in the performance of

Page 6 -     **FIRST AMENDED COMPLAINT**

employment duties or failure to perform duties or legal requirements." This reprimand involved an incident on or about January 5, 2019, where a client entered the BCHD threatening those in the building with mortal danger. Plaintiff defused the situation by talking the person into stepping into a side room away from the other clients present. He then sought other BCHD managers to deal with the aggravated client. For acting and taking steps to protect the other clients, Brown was cited for an alleged violation of the "no client contact" directive.

27.   On or about February 9, 2019, Plaintiff was contacted by a client of Lincoln County Mental Health about renting a room in Plaintiff's home. About 11 days later, Plaintiff terminated the rental agreement with the person when he found that she had severe psychiatric health issues.

28.   On or about February 14, 2019, while the person was still living in Plaintiff's home, Plaintiff drove her to counseling at the Lincoln County Mental Health. Defendant Brown claimed that Plaintiff sought to "solicit" other potential renters and advised the Lincoln County Mental Health that this was inappropriate. Defendant Brown also falsely accused Plaintiff of identifying himself as a Lincoln County Mental Health crisis worker, by claiming that he was a "counselor."

29.   Prior to April 2019, Plaintiff informed his co-workers that he was intending to file suit against Defendants Brown and Jackson for falsely accusing him of theft and for humiliating and damaging his reputation and integrity.

30.   On or about April 15, 2019, Defendant Emerick, on the recommendation of Defendant Brown, terminated Plaintiff's employment with the BCHD.

31.   Defendants Brown, Ridler and Jackson engaged in a systematic campaign to create a case for terminating Plaintiff. The campaign was based on unfounded and unsubstantiated accusations and allegations made by Defendants Ridler, Jackson and Brown. It resulted in the Plaintiff being demeaned, stigmatized as dishonest, humiliated in front of his

Page 7 -    **FIRST AMENDED COMPLAINT**

clients, coworkers and employees of the police department, and ultimately terminated from his employment.

33. The termination letter was placed in Plaintiff's personnel file along with the opinions and accusations of the Defendants Johnson and Ridler. Given their positions of authority, these statements will likely keep Plaintiff from ever obtaining employment in his chosen career. Their actions directly caused and/or contributed to the harm to the Plaintiff.

33. The false allegations that formed the basis for Plaintiff's dismissal included, but were not limited to, insubordination, willfully giving false information and improper conduct by a County employee, misconduct in the performance of employment duties or failure to perform duties or legal requirements.

34. Defendant Emerick was aware that Plaintiff was planning to sue BCHD and Defendants Brown and Anderson.

35. Prior to termination, Plaintiff voluntarily met with Defendants to explain his actions as reasonable and within BCHD policies. Nevertheless, Defendants terminated Plaintiff's employment, negatively impacting his ability to obtain employment in his chosen career in the future.

36. Defendants BCHD and Brown exhibited a retaliatory intent. Their impartiality and objectivity in this matter is dubious. Based on Brown's reporting of Plaintiff's alleged misconduct, Emerick used information provided by Brown to secure false or misleading statements and information from parties and intended to use the same for several unlawful purposes: (a) to fabricate an *ex post facto* justification to terminating Plaintiff's employment; (b) to create a false and misleading agency report i.e. "dismissal" and/or (c) undermine Plaintiff's credibility in his claims against Defendants.

Page 8 -    **FIRST AMENDED COMPLAINT**

37. On or about January 16, 2018, Plaintiff hand delivered actual Notice of Tort Claim to Defendant Brown. She advised Plaintiff she would give a copy of the Notice to Director Defendant Anderson.

38. On or about June 25, 2018 Plaintiff through his attorney sent formal Notice of Claim via certified mail to the City/County Insurance Services ("CIS").  Copies on the formal Notice were sent to the Defendants, each and all.

39. On or about August 21, 2018, CIS sent a letter to Plaintiff's attorney denying any liability for injuries to Plaintiff.

40. On or about October 2, 2019, Plaintiff's counsel sent a tort claim notice to Defendants' counsel advising of additional claims against the Defendants.

## FIRST CLAIM FOR RELIEF

*Plaintiff McKinney against All Defendants*

### VIOLATION OF U.S. CONSTITUTION 42 U.S.C. § 1983

41. Plaintiff re-alleges paragraphs 1 through 40 above.

42. Plaintiff brings this claim pursuant to 42 U.S.C.§ 1983 for violation of rights protected by the Fourth Amendment and Fourteenth Amendments of the U.S. Constitution, which applies to actions of local governments pursuant to the Fourteenth Amendment.

43. Under 42 U.S.C. § 1983, the Defendants are liable to Plaintiff, individually due to their special relationship as a public enforcement agency ("BCSO") and as his employer ("BCHD").

44. Defendants Ridler and Jackson denied Plaintiff due process by, among other things, failing to attend the December 5, 2017 investigatory meeting related to the alleged theft of a purse by Plaintiff.  Notwithstanding the fact that the BCHD concluded that there was no theft, Defendants Jackson and Ridler banned Plaintiff from the jail and access to his clients.

Page 9 -    **FIRST AMENDED COMPLAINT**

45.     Defendant Ridler wrote a letter to BCHD wherein he advised that Plaintiff would be banned from the jail.  Defendant Jackson sent an email to jail personnel and BCHD management with allegations of theft against Plaintiff.  The letter and the email became part of the Letter of Expectations prepared by Defendant Brown.  Both the letters and the email were placed (published) as part of Plaintiff's personnel file. In the letter, Defendants made false and malicious accusations as to Plaintiff's integrity, honesty and trustworthiness with the intent to harm Plaintiff.

46.     Defendants made these statements with the intent, knowledge and hope that they would be circulated within the BCSO and BCHD.

47.     Defendants made these statements with malice.  Defendants knew when using these words that they were false and extrinsic evidence of their personal hostility and/or ill feeling toward Plaintiff proves their malice.  The words of their libel themselves also show malice.

48.     Defendants knew that such action would become public knowledge as it was communicated to the jail personnel, Plaintiff's coworkers at the BCHD and to Plaintiff's clients and would cause Plaintiff embarrassment, humiliation and emotional distress.  Plaintiff did suffer embarrassment, humiliation and emotional distress.

49.     Placing the stigmatizing information in Plaintiff's personnel file and publishing it through email interfered with Plaintiff's constitutional rights and privileges protected by 42 U.S.C.§ 1983, including but not limited to his right to life, liberty, property, equal protection, and substantive due process under the Fourteenth Amendment.

50.     Plaintiff is entitled to damages as a result of Defendants' failure to protect and damaging of Plaintiff's liberty rights, the stigmatizing of Plaintiff's reputation, and the severe emotional distress suffered.

/ / /

## SECOND CLAIM FOR RELIEF

*Plaintiff against all Defendants for*

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

51.     Plaintiff re-alleges paragraphs 1 through 50 above.

52.     Defendants, individually and in their capacity as agents of the BCSO and the BCHD, intentionally abused, harassed, falsely accused, and otherwise tormented Plaintiff.

53.     The Defendants' behavior and conduct exceeds all bounds usually tolerated by a decent society, and was done willfully, maliciously and deliberately with the intent to cause Plaintiff severe mental pain and emotional distress, or with reckless indifference to the likelihood that such behavior would cause severe emotional distress and with utter disregard for the consequences of such actions.

54.     Defendants' actions did cause Plaintiff severe emotional distress.  Plaintiff had to interact daily with fellow co-workers and former clients.  Plaintiff had to face them knowing they knew he had been accused of theft and as a result he was barred from access to the jail and his clients.  This humiliated and shamed Plaintiff, thereby causing him severe emotional distress.

55.     As a proximate and foreseeable result of Defendants' conduct, Plaintiff has suffered severe emotional distress, severe mental anguish and anxiety, depression, embarrassment, humiliation and his peace of mind has been disturbed such that he is entitled to recover compensatory damages.

## THIRD CLAIM FOR RELIEF

*Plaintiff against Defendants Anderson and Brown for*

### INTENTIONAL INTERFERENCE WITH
### PROSPECTIVE ECONOMIC RELATIONS

56.     Plaintiff re-alleges paragraphs 1 through 55 above.

57. Defendants and Plaintiff had a professional and/or employment relationship. Plaintiff was employed by Defendant BCHD. Plaintiff had a professional relationship with the BCSO.

58. Defendants Ridler and Jackson interfered with Plaintiff's employment relationship through improper means, namely by maliciously publishing false information about Plaintiff that damaged his reputation, integrity and honesty.

59. Defendants Ridler and Jackson's actions were taken for the improper purpose of harming Plaintiff, specifically in his job as a Peer Specialist.

60. A causal connection exists between Plaintiff's termination and the actions of Defendants Ridler and Jackson which lead to his termination.

61. As a proximate and foreseeable result of Defendants' conduct, Plaintiff has and will foreseeably suffer economic loss, such that he is entitled to recover compensatory damages.

## FOURTH CLAIM FOR RELIEF

*Plaintiff against Defendants BCHD and Emerick for*

### WRONGFUL TERMINATION – RETALIATION

62. Plaintiff re-alleges paragraphs 1 through 61 above.

63. Defendant Emerick, in her official capacity, is responsible for the tortious acts of her agents, Defendants Brown and Anderson, as alleged herein, upon information and belief, in that their actions (i) were expressly authorized by Emerick, including pursuant to an official policy and (ii) were ratified by Emerick to the extent she either knew or should have known their actions were based on retaliation against Plaintiff for filing a legal action against the BCHD and above mentioned Defendants.

64. As a proximate and foreseeable result of Defendants' negligent conduct, Plaintiff has suffered severe emotional distress, severe mental anguish and anxiety, depression,

embarrassment, humiliation and his peace of mind has been disturbed such that he is entitled to recover compensatory damages.

WHEREFORE, Plaintiff prays the Court to:

A.	Enter a judgment against Defendants and award damages to Plaintiff and against Defendants, jointly and severally, in the amount of $900,000, plus pre-judgment interest at the statutory rate of nine percent per annum;

B.	Award Plaintiff reasonable attorney fees and costs incurred in connection with this action; and,

C.	Award Plaintiff such other and further equitable relief as the Court deems just or equitable.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

DATED this 5th day of November, 2019.

      Aman Law, LLC

    BY: /s/ David S. Aman
      David S. Aman, OSB No. 962106
      Email: david@amanlawpdx.com
       *Attorney for Plaintiff*

      *AND*

      Renee E. Stein, WSBA 21164
      (To Seek Admission Pro Hac Vice)
      Email: renee@rsteinlaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the **FIRST AMENDED COMPLAINT** was served on:

>John R. Barhoum, OSB No. 045150 (john.barhoum@chockbarhoum.com)
>Tracy J. Frazier, OSB No. 107125 (tracy.frazier@chockbarhoum.com)
>Chock Barhoum LLC
>121 SW Morrison St., Suite 415
>Portland, Oregon 97204
>
>   Attorneys for Defendants

By First Class Mail and email, on the date set forth below.

DATED: November 5, 2019

>             AMAN LAW, LLC
>
>
>    By:  /s/ David S. Aman
>         David S. Aman, OSB No. 962106
>         Email: david@amanlawpdx.com
>             *Attorney for Plaintiff*

Page 14 -    **FIRST AMENDED COMPLAINT**